IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARIA L. MARTINEZ,                                    OPINION AND ORDER

                 Plaintiff,                                    09-cv-771-bbc

     v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff seeks reversal of the commissioner's decision that she is not disabled and therefore is not eligible for Supplemental Security Income under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(I) and 423(d) and 1382(c)(3)(A).  Plaintiff contends that the administrative law judge erred in three respects:  giving more weight to the opinion of the state agency psychologist than she did to the opinions of plaintiff's treating psychiatrist and social worker, failing to consider limitations caused by plaintiff's obesity and relying on flawed vocational expert testimony.

1

Having reviewed the record and the administrative law judge's decision, I am rejecting plaintiff's arguments and affirming the commissioner's decision.  Although plaintiff's ability to work is limited by her obesity and some mental and physical restrictions, the evidence indicates that she is capable of performing the jobs that the vocational expert identified as being within her abilities and existing in Wisconsin.  It was not error for the administrative law judge to adopt the vocational expert's conclusion.  Neither was it error for her to reject opinions from a treating psychiatrist who saw plaintiff infrequently and whose questionnaire answers were not supported by her treatment notes or to reject the opinions of a social worker who had seen plaintiff on a number of occasions but who did not give any explanation for her opinions about plaintiff's functional limitations.  Further undercutting the opinions of the psychiatrist and social worker was the lack of any psychological assessment or testing to support their evaluation of plaintiff's mental and emotional limitations.  As for plaintiff 's obesity, the administrative law judge found it a severe impairment, but noted that plaintiff could walk without using an assistive device and ride a bike.  Moreover, in considering the jobs that plaintiff would be able to perform, the vocational expert took into consideration her need to change positions during the work day.

The following facts are drawn from the administrative record (AR) that was before the administrative law judge.

2

RECORD FACTS

A.  Background

Plaintiff was born on December 18, 1970.  AR 61.  She has a ninth grade education, AR 79, and has worked as a dishwasher at a café under a government "Experience Works" program and as a janitor at the Salvation Army.  AR 227, 228.

Plaintiff filed an application for supplemental security income on May 8, 2006, alleging that she had been unable to work since April 26, 2006 because of depression, anxiety and panic attacks.  AR 53, 227.  After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on December 5, 2008 before Administrative Law Judge Wendy Weber.  The administrative law judge heard testimony from plaintiff, AR 120-34, a neutral medical expert, AR 134-42, and a neutral vocational expert, AR 143-57.  On February 4, 2009, the administrative law judge issued her decision, finding plaintiff not disabled.  AR 53-63.  This decision became the final decision of the commissioner on October 27, 2009, when the Appeals Council denied plaintiff's request for review.  AR 1-4.

B.  Medical Evidence

1.  Physical impairments

On April 6, 2006, plaintiff saw Dr.  Joseph F. Boero for leg and back pain.  He found

3

her to be morbidly obese with  no signs of diabetes or thyroid disease and experiencing pain with range of motion of the low back.  AR 290.  Boero discussed weight loss strategies with plaintiff and prescribed pain medication.  AR 291.

On April 7, 2006, plaintiff went to the emergency room for abdominal pain, which was diagnosed as recurrent diverticulitis.  She was given pain medication and an antibiotic.  AR 293-94.  An abdominal x-ray was normal.  AR 303.

On June 5, 2006, plaintiff returned to see Dr. Boero, who noted again that she was morbidly obese, standing five feet one inch tall and weighing 273 pounds, with a body mass index of 51.  AR 373.  Boero saw plaintiff again on June 28 for diverticulitis.

On August 16, 2006, when plaintiff returned to see Dr. Boero, she weighed 275 pounds.  She had a pregnancy test, which came back positive.  AR 371.  Plaintiff gave birth to her sixth child, a baby boy, on March 21, 2007.  In May, she elected to have tubal ligation surgery.  AR 433.  Dr. Boero treated plaintiff for an incision infection after this surgery.  AR 430.  When he saw her in June, he noted she was "doing very well" and "looked very good." He diagnosed osteoarthritis with back and knee pain and prescribed Vicodin. Plaintiff weighed 255 pounds.  AR 426.

When plaintiff returned to see Dr. Boero in November 2007, she reported that she was going back to school for her GED and going to try to get a driver's license.  Also, she reported losing some weight, being more physically active, doing more housework and having

4

a little more stamina in her legs and back.  Boero noted that plaintiff weighed 263 pounds and walked without an assistive device.  AR 425.

On October 1, 2008, plaintiff began seeing Dr. E. Michael Schneeberger for primary care.  At the time, she weighed 262.8 pounds.  Her physical examination was completely normal.  Schneeberger noted that a urine sample taken from her at the emergency room on September 21, 2008 tested positive for marijuana.  AR 414.  He told plaintiff that he did not think she needed narcotic analgesics for her back or abdominal pain.  He offered her physical therapy but she refused it.  AR 415.

2.  Mental impairment

a. Dr. Maureen Leahy

Plaintiff saw psychiatrist Dr. Maureen Leahy for depression on August 3, 2005.  Leahy noted that plaintiff was slightly depressed but looked quite good.  Leahy diagnosed major depressive order and post traumatic stress disorder from childhood abuse and neglect, with a low suicide risk.  AR 312.  In October 2005, when Leahy saw plaintiff for a 15-minute "med check," she reported that plaintiff was feeling depressed with no suicidal ideations.  Leahy adjusted her medications.  AR 313.

Plaintiff returned to see Dr. Leahy for a 15-minute "med check" on March 15, 2006.  She reported feeling depressed and hopeless, helpless and worthless.  Leahy adjusted her

5

medications. AR 327.  Plaintiff returned again on April 26, 2006, for another 15-minute check, reporting that she was doing much better and  not feeling "depressed, hopeless or helpless."  Leahy noted that plaintiff's depression was in remission, as was her polysubstance dependence.  She continued plaintiff on her medications.  AR 328.

On May 23, 2006, Dr. Leahy completed a Treating Medical Source Statement-Mental Impairment Questionnaire based on her visits with plaintiff from November 4, 2003 though April 26, 2006.  The medical records show that Leahy met with plaintiff for an hur at plaintiff's first visit and thereafter met with her for 15-minute medication checks.  Leahy indicated that plaintiff's global assessment functioning score was 45 and that plaintiff would miss work more than three times a month.  She marked boxes, indicating that plaintiff's ability to function in certain areas such as understanding and remembering very short and simple instructions and making simple work-related instructions was seriously limited but not precluded and indicated that plaintiff had no useful ability to function in a number of other areas, such as maintaining attention for two hours and sustaining an ordinary routine without special supervision.  (See Appendix A.)  Leahy concluded that plaintiff would have moderate restrictions of activities of daily living, marked difficulties in maintaining social functioning, frequent deficiencies of concentration, persistence or pace and that she would have repeated episodes of decompensation.  AR 337-42.

In July 2006, plaintiff saw Dr. Leahy, reporting that she was more depressed.  AR 84.

6

On August 21, 2006, plaintiff called Leahy and advised that she was pregnant. They discussed her medications. AR 86. When Leahy saw plaintiff on August 31, 2006, she restarted plaintiff's Prozac after plaintiff said she was having withdrawal symptoms. Plaintiff reported not being depressed. AR 87.

On January 3, 2007, plaintiff saw Leahy, who noted that plaintiff was not depressed. AR 505. When plaintiff saw Leahy after the birth of her son in March 2007, she said was depressed again and Leahy restarted her on antidepressants. AR 511. In April 2007, when plaintiff reported being depressed because her boyfriend had broken up with her, Leahy increased plaintiff's medication. AR 513. At plaintiff's June 27 visit with Dr. Leahy, she was depressed and tearful. AR 516. In August 2007, at her last visit with Leahy, plaintiff reported that her mood was good and that she was not depressed or irritable. AR 519.

On July 22, 2009, the state disability agency asked Dr. Leahy to complete a second mental impairment questionnaire for plaintiff's January 1, 2006 condition. AR 91. Leahy found that as of 2004, plaintiff had moderate restrictions of activities of daily living and marked difficulties in maintaining social functioning and in maintaining concentration, persistence or pace with three episodes of decompensation within a 12-month period. She indicated that plaintiff was seriously limited but not precluded from performing certain functions, such as sustaining an ordinary routine without special supervision and that she would be unable to meet competitive standards in certain other areas. (See Appendix A.)

7

However, she found that plaintiff was not limited in the ability to adhere to basic standards of neatness and cleanliness and to use public transportation and she found that plaintiff had limited but satisfactory ability to perform certain tasks, such as remembering work-like procedures and understand and remember very short and simple instructions.  Leahy also indicated plaintiff would miss work more than four days a month.  AR 91-96

b.  Linda Leindecker

Beginning in August 2005, plaintiff began attending counseling sessions with social worker Linda Leindecker.  AR 314.  On January 9, 2006, Leindecker diagnosed major depressive disorder, post traumatic stress disorder, cannabis abuse and a specific phobia of a car. She rated plaintiff's Global Assessment Functioning Score at 55.  AR 310.

On May 11, 2006 Leindecker filled out a mental impairment questionnaire.  AR 331-36.  She concluded that plaintiff would have slight difficulties in maintaining social functioning and moderate limitations maintaining concentration, pace or persistence.  She did not indicate any opinion about activities of daily living or episodes of decompensation. AR 336.  She found that plaintiff would have no useful ability to travel in an unfamiliar place or use public transportation.  She found that plaintiff would be seriously limited but not precluded in certain areas such as maintaining attention for a two hour segment and completing a normal work-day and work week without interruptions from psychologically

8

based symptoms. AR 334-35.  Finally Leindecker noted that plaintiff had normal intellectual functioning and would be expected to miss work only one day a month.  AR 336.

c.  Other treating sources

On August 21, 2007, plaintiff saw psychiatrist Dr. Robert Olin and reported to him that she was stable.  AR 521.  On January 9, 2008, plaintiff had an initial psychiatric evaluation with Advance Practice Nurse Prescriber Barbara A. Schira.  AR 79-80.  Schira reported that plaintiff had not seen Dr. Olin since August 2007; her Prozac prescription had lapsed; and she was still seeing Linda Leindecker for therapy.  AR 79.  Schira diagnosed major depressive disorder, recurrent, mild to moderate and prescribed Prozac.  AR 80.

## C.  Consulting Physicians

On July 24, 2006, state agency physician Syd Foster completed a physical residual functional capacity assessment for plaintiff, listing diagnoses of leg pain, back pain, asthma and diverticulitis.  AR 346.  Foster found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour workday, but should avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation.  AR 347, 350.

On July 31, 2006, state agency psychologist William Merrick completed a Psychiatric

Review Technique for plaintiff, diagnosing affective disorder, anxiety-related disorder and substance addiction disorder.  AR 357.  He concluded that plaintiff had mild restrictions of the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and no episodes of decompensation.  He saw no evidence of the presence of the "C" criteria (impairment-related functional limitations incompatible with the ability to do any gainful activity that are caused by mental disorders and manifested by medical findings.  <u>Disability Evaluation Under Social Security</u> (Blue Book-September 2008) § 12.00).  AR 361-62.

Merrick completed a mental residual functional capacity assessment for plaintiff, finding her moderately limited in her ability to (1) understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms; (5) perform at a consistent pace without an unreasonable number and length of rest periods; and (6) respond appropriately to changes in work setting.  AR 354-55.  On December 20, 2006, state agency psychologist Roger Rattan affirmed Merrick's Psychiatric Review Technique and Mental Residual Functional Capacity Assessment.  AR 406.

On December 18, 2006, state agency physician Zhen Lu completed a physical residual

10

functional capacity assessment for plaintiff, listing diagnoses of obesity and leg, knee, back and abdominal pain.  AR 398.  Lu found that plaintiff could lift 20 pounds occasionally and 10 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day.  AR 399-402.

### D.  Hearing Testimony

At the administrative hearing, plaintiff testified that she lived with five of her six children.  She was receiving Public Assistance, food stamps and child support for her youngest son.  Plaintiff  said she had worked as a dishwasher through a work program, but had to stop working because she could stand for only 20 minutes, that she had never had a driver's license, AR 121-23, and that she had worked in 2006 at a church during the Christmas season sorting Christmas presents.  AR 124.

Plaintiff testified that she had had back trouble for 21 years and that she had a dislocated disc in her lower back, AR 124-25, that she could not work because of trouble climbing stairs, arthritis in her knees and back and depression.  AR 125-26.  She added that she had panic attacks and had had her last one on Halloween.  AR 127.

Plaintiff testified that she read at a third-grade level, AR 128, that she was 5 feet two inches tall and that she weighed 374 pounds.  AR 129.  On questioning by the medical

expert, plaintiff testified that she takes care of her baby while the older children are in school.  AR 136.

The administrative law judge called Joseph Malancharuvil, a certified clinical psychologist, to testify as a neutral medical expert.  AR 134.  Malancharuvil testified that plaintiff had a mood disorder, not otherwise specified, and a personality disorder, not otherwise specified.  In making this determination, he explained that there was no detailed assessment of her mental health status in the record such as a psychological assessment or standardized test.  Further, he testified that he did not have the benefit of the previous two years of plaintiff's medical records.  AR 139.

Malancharuvil testified that plaintiff had mild limitation of the activities of daily living, moderate limitation of social functioning and mild limitations of concentration, persistence and pace.  He concluded that plaintiff was restricted to moderately complex tasks, up to four or five step instructions in a habituated setting with no operation of hazardous machinery, no performance of safety operations and no fast-paced work.  AR 138. On questioning by plaintiff's attorney, Malancharuvil testified that plaintiff's obesity would have an impact on her mood.  AR 140.

Malancharuvil considered the opinions of Dr. Leahy and Linda Leindecker that were in the record.  He noted that although Leahy did not give any detailed analysis of plaintiff's mental status, she had concluded that she was non-functional.  He testified that he believed

12

that at the time Leahy was seeing plaintiff, she was working, became pregnant and then took care of her baby. Also, he noted that the assessment completed by Leindecker at the same time as Leahy's was not consistent with Leahy's assessment. AR 138.

The administrative law judge called Steven M. Berry to testify as a neutral vocational expert. AR 143. She asked him to assume an individual of plaintiff's age, work experience and the residual functional capacity to perform work that is limited to moderately complex tasks of four-to-five step instructions, habituated setting, no hazardous machinery, no safety operations and no fast paced work. The individual could lift 20 pounds occasionally and ten pounds frequently, sit six hours in an eight-hour work day, stand or walk six hours in an eight-hour workday but must be able to change positions at will with occasional bending or stooping and no climbing stairs, ladders or scaffolds. Berry testified that plaintiff could not perform her past relevant work,

> but there would be work as cashier II, <u>DOT</u> number 211.462-010. This is unskilled, SVP 2, light exertional level. I would erode the numbers approximately 50 percent in view of the change of positions at will. After erosion in the state, there would be approximately 2,600 such jobs; and nationally, about 50,000. Another example would be that of an assembler of small parts, <u>DOT</u> number 706.684-022. This is unskilled, SVP two, light exertional level. I'm going to erode the numbers approximately 50 percent for the sit/stand option at will, as well as the no fast-paced work. After erosion in the region – excuse me, in the state, 1,200 jobs; nationally, 60,000.

AR 149-50.

On cross examination, plaintiff's lawyer asked Berry to assume the same individual

13

who could read at a third grade level, was limited to low stress jobs and could stand for no more than 20 minutes and sit for 45 minutes.  At Berry's request, plaintiff's lawyer defined low stress jobs as those that did not require the person to move around.  Berry testified that with this restriction, there would not be a significant number of jobs that the individual could perform.

Next, plaintiff's lawyer asked Berry to assume the limitations given by Dr. Leahy. Berry stated that an individual with these limitations would be precluded from all work.  AR 150-52.  The lawyer then asked the expert to assume an individual with the limitations found by the state agency psychologist, Merrick.  Berry testified that the degree of limitation was not the same as that found by Leahy.  The lawyer asked the expert to assume that moderately meant seriously limited.  Berry responded that if moderately is defined as seriously, an individual with the limitations found by Merrick would be precluded from all employment.  AR 153.

In response to a question from plaintiff's lawyer about the source of his numbers, Berry testified that he obtained them from the <u>Employment Occupational Quarterly</u> and <u>Unskilled Employment Quarterly</u>.  AR 154.  Berry testified that using his knowledge, skills, experience and education he estimates the number of jobs for each occupation in <u>The Dictionary of Occupational Titles</u>..  AR 155.  In response to a question from the administrative law judge, Berry confirmed that his testimony was consistent with the

14

information found in the <u>Dictionary</u> and its companion publications.  AR 156.

Following up, the plaintiff's attorney asked Berry whether the sit or stand option was articulated in the <u>Dictionary</u>.  Berry stated that it was not but that his testimony was not inconsistent with the <u>Dictionary</u> because it was based upon his knowledge, skills, experience, education and the labor market.  AR 156.

### E.  Administrative Law Judge's Decision

In reaching her conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity since May 8, 2006.  At step two, she found that plaintiff had severe impairments of chronic low back pain; mood disorder, not otherwise specified; personality disorder, not otherwise specified; obesity and diverticulitis.  At step three, she found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  Specifically, she found that plaintiff did not meet Listing 12.04, Affective Disorders, or Listing 12.08, Personality Disorders.  AR 55.

The administrative law judge found that plaintiff retained the residual functional capacity to perform work requiring sitting six hours in an eight-hour workday, standing or

15

walking six hours in an eight-hour workday with the ability to change positions at will; frequently lifting or carrying 10 pounds, occasionally lifting or carrying 20 pounds; occasional bending and stooping, and no climbing stairs, ladders or scaffolds.  Also, she found that plaintiff could perform moderately complex tasks with four to five-step instructions and work in a habituated environment but could not work with hazardous machinery, perform safety operations or engage in fast paced work.  AR 56.

In determining plaintiff's residual functional capacity, the administrative law judge considered her obesity.  She rejected plaintiff's testimony that her weight was 374 pounds because the medical records showed that plaintiff weighed 262.8 pounds in October 2008. She stated as follows:

> I have considered the effect of plaintiff's obesity pursuant to the directives set forth in Social Security Ruling 02-01p in determining the claimant's residual functional capacity.  I note that despite her obesity claimant was able to ride a bicycle to and from work (Exhibits 2F, p. 5; 10F, p. 8) and is able to walk without any assistive device (Exhibit 15F, p.19).

Also, the administrative law judge considered the opinions of Dr. Maureen Leahy and Linda Leindecker.  The administrative law judge discounted the opinions of Leahy because, although Leahy was plaintiff's treating psychiatrist, she had seen plaintiff for only one one-hour appointment in 2003 and for only 15-minute appointments after that; her records did not include any detailed analysis of the plaintiff's mental status or any reference to psychological testing; and her opinions were inconsistent with her own treatment notes and

16

with the activities of which plaintiff was capable, which included working in a seasonal job and taking care of her baby.  The administrative law judge concluded:

> As Dr. Leahy has provided no reasonable explanation for the basis of her conclusions, nor pointed to any objective findings in support thereof, I do not find it appropriate to give weight to the check-off forms she completed.

AR 58.

In addressing Leindecker's opinion, the administrative law judge accorded little weight to the form she completed because the check boxes included little if any explanation for her conclusions.  The administrative law judge noted that Leindecker was not an acceptable medical source and that her conclusions were based on plaintiff's alleged symptoms rather than on clinical or other objective findings.  AR 59.

In assessing plaintiff's residual functional capacity, the administrative law judge concurred with Dr. Malancharuvil's findings and adopted the limitations he had found.  She accorded less weight to the opinion of state agency psychologist Merrick because Malancharuvil had the benefit of additional documents.  She concluded that documents added to the record after July 31, 2006, the date of the state agency psychologist's report, were more consistent with the opinion of Malancharuvil.  Also, she noted that she was giving plaintiff the benefit of the doubt because the more recent records that Malancharuvil had not reviewed showed that plaintiff's mental impairments might have improved since 2006.  AR 59.

17

At step four, the administrative law judge found that plaintiff was not able to perform her past work.  AR 61.  At step five, relying on the testimony of the vocational expert, the administrative law judge found that there were 2,600 cashier II jobs (DOT # 211.462-010) and 1,200 assembler jobs (DOT # 706.684.022) in Wisconsin that plaintiff could perform. She found the expert's testimony consistent with the information contained in the Dictionary of Occupational Titles and concluded that plaintiff was not disabled.  AR 62.


OPINION

It is undisputed that plaintiff has restrictions on her functioning, both mental and physical, but the question is whether the administrative law judge was justified in concluding that she was not disabled from performing any substantial gainful work activity in the state economy.  Stated another way, did she take into account all the evidence and give good reasons for her decisions to adopt some of it and reject other parts?

Dr. Leahy is considered a treating physician, which means that her opinions are generally given more weight than those of a state agency physician or a medical expert who have never seen plaintiff in person.  It would be improper for an administrative law judge to disregard the opinions or a treating physician unless she can explain persuasively why she has done so.  In this case, the administrative law judge provided the necessary explanation. She wrote that Leahy's opinions were not supported by her own treatment notes, any

18

detailed analysis or psychological testing; Leahy's ratings that plaintiff was non-functional were contradicted by plaintiff's ability to work in a seasonal job and take care of her baby during that time; Leahy had not spent a great deal of time with plaintiff (all but one of plaintiff's visits with Leahy were for 15-minute medication checks); and her opinion was inconsistent with the opinion of the social worker who was seeing plaintiff at the same time. These were good reasons for rejecting Dr. Leahy's opinion, well supported by substantial evidence in the record.

Although the administrative law judge discounted Dr. Leahy's opinions in part because they were inconsistent with the opinions of Linda Leindecker, a social worker who counseled plaintiff, she did not give any weight to Leindecker's opinions either. She noted that Leindecker was not an acceptable medical source, but she did as Social Security Ruling 06-3p requires, which is to give consideration to the opinion of a social worker. The ruling does not require her to accept the opinion and she did not. After reviewing it, she rejected it because it was not based on clinical or other objective findings and her box-checking "included little if any explanation" for her choices. AR 59. These were legitimate, well supported reasons for rejecting the opinion.

The administrative law judge discounted the opinions of the state agency psychologist, William Merrick, as well, giving more credence to the limitations identified by AR. Malancharuvil than to the limitations found by Merrick. Again, she explained her

19

reasons for doing so, which were that Malancharuvil had seen a few more recent medical records of plaintiff that Merrick had and that later records that neither expert had seen and which showed improvements in plaintiff's status were more consistent with Malancharuvil's conclusions than with Merrick's.

The administrative law judge found that plaintiff was severely impaired by obesity, but that she was able to ride a bike and walk without an assistive device and that in November 2007, she had reported to Dr. Boero that she was more physically active, doing more housework and having a little more stamina in her legs and back. Plaintiff points to no evidence in the record that her obesity affected her physical ability to work in a more significant way than the administrative law judge found. The administrative law judge's analysis is sufficient and supported by other evidence in the record.

The administrative law judge noted that although plaintiff complained of low back pain in October 2008, her treating primary care physician found no abnormality in her gait, reflexes, mental status or hand, arm and leg movements. She complained of a "slipped disc" at the hearing, but as the administrative law judge observed, the record contains no objective evidence of any such problem or of any request by a physician for diagnostic testing of back pain. It was reasonable for the administrative law judge not to conclude that plaintiff's obesity was more than a severe impairment.

In her reply brief, plaintiff argues that her obesity may have an impact on her mental

health.  Generally, issues raised for the first time in a reply brief are waived.  Even if this were not the case, plaintiff has failed to identify anything in the  medical records that would support her suggestion that her obesity affected her mental abilities.

Finally, the administrative law judge acted properly in relying on the vocational expert's testimony that there were significant numbers of jobs in the state economy that plaintiff could perform.  The vocational expert handled any potential conflict between his testimony and the information in <u>The Dictionary of Occupational Titles</u> that might arise from the fact that the sit or stand option plaintiff requires is not factored into the information in the <u>Dictionary</u>.  The vocational expert explained that he had taken this fact into consideration when he reduced the numbers by 50% to account for plaintiff's need to change positions during the day.  He testified that this conclusion was based on his knowledge, skills, experience, education and the labor market and that it was not inconsistent with the <u>Dictionary</u>.  Plaintiff identified nothing that would refute his statement.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security is AFFIRMED and plaintiff Maria L. Martinez's appeal is DISMISSED.  The

clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 16th day of August, 2010.

BY THE COURT:

/s/
BARBARA B. CRABB
District Judge

APPENDIX A

| Functional Area | Leahy - 5/23/06 | Leahy - 7/22/09 | Leindecker-5/11/06 |
|---|---|---|---|
| Remember work-like procedures | Seriously limited | Limited but satisfactory | Limited but satisfactory |
| Understand and remember short and simple instructions | Seriously limited | Limited but satisfactory | N/A |
| Carry out very short and simple instructions | Seriously limited | Limited but satisfactory | More than Satisfactory |
| Make simple work-related decisions | Seriously limited | Limited but satisfactory | Limited but satisfactory |
| Ask simple questions or request assistance | Seriously limited | Seriously limited | More than satisfactory |
| Be aware of normal hazards | Seriously limited | Seriously limited | More than satisfactory |
| Respond appropriately to changes in routine work setting | Seriously limited | Unable to meet competitive stands | Seriously limited |
| Adhere to basic standards of neatness/cleanliness | Seriously limited | Unlimited | Limited but satisfactory |
| Travel in unfamiliar place | Seriously limited | Limited but satisfactory | No useful ability |

23

| | | | |
|---|---|---|---|
| Use public transportation | Seriously limited | Unlimited | No useful ability |
| Maintain attention for 2 hr segment | No useful ability | Unlimited | Seriously limited |
| Maintain regular attendance | No Useful ability | Limited but satisfactory | Seriously limited |
| Work in proximity to others without being unduly distracted | No useful ability | Unable to meet competitive standards | Limited but satisfactory |
| Sustain an ordinary routine without special supervision | No useful ability | Seriously limited | not answered |
| Complete a normal workday without interruptions from psychological based symptoms | No useful ability | Seriously limited | Seriously limited |
| Perform at a consistent pace without an unreasonable number and length of rest periods | No useful ability | Unable to meet competitive standards | Limited but satisfactory |
| Accept instructions and respond appropriately to criticism from supervisors | No useful ability | Unable to meet competitive standards | Limited but satisfactory |
| Deal with normal work stress | No useful ability | Unable to meet competitive standards | Seriously limited |

24

| | | | |
|---|---|---|---|
| Set realistic goals or make plans independently of others | No use | Unable to meet competitive standards | N/A |
| Deal with stress of semiskilled and skilled work | Unable to meet competitive standards | | Seriously limited |
| | | | |
| | | | |

KEY:

     **Seriously limited**, but not precluded means ability to function in this area is seriously limted and less than satisfactory, but not precluded in all circumstances.

     **Unable to meet competitive standards** means that your patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting.

     **No useful ability to function**, an extreme limitation, means your patient cannot perfomr this activity in a regular work setting.

25